EXHIBIT D

COMMONWELATH OF MASSACHUSETTS

WORCESTER, ss. SUPERIOR COURT

| | |
|---|---|
| BUD'S GOODS & PROVISIONS CORP., Plaintiff, vs. JOHN DOE, LAM YAN WUN MERTON, and HSBC Bank USA, Defendants. | Civil Action No.: 2185CV00226 |

**FIRST AMENDED COMPLAINT**

As for its First Amended Complaint against Defendant John Doe, Defendant Lam Yan Wun Merton, and Defendant HSBC Bank USA, Plaintiff Bud's Goods & Provisions Corp. alleges as follows:

**Parties**

1. Plaintiff Bud's Goods & Provisions Corp. ("Bud's") is a Massachusetts corporation with a principal place of business at 54 West Boylston Street, Worcester, Massachusetts.

2. Defendant John Doe is an anonymous hacker who uses and/or has used the email address of mike.holland@thehollandscompanies.com and whose domicile and residential and/or business addresses are unknown.

3. Defendant Lam Yan Wun Merton ("Merton") is the named account holder for an account at HSBC Bank, 452 5th Avenue, New York, New York to which funds at issue were diverted and whose domicile and residential and/or business addresses are unknown.

4. Defendant HSBC Bank USA ("HSBC Bank") is a national banking institution with its principal place of business in Buffalo, New York, and at all times material to this action, was registered to do business in Massachusetts with offices at 99 High Street, 16th Floor, Boston, Massachusetts.

**Jurisdiction and Venue**

5. Bud's invokes the jurisdiction of this Court pursuant to Mass. Gen. Laws ch. 212, §§ 3 and 4, as the amount in controversy is greater than $25,000.

6. Venue is proper in this Court pursuant to Mass. Gen. Laws ch. 223, § 1, and Mass. Gen. Laws ch. 214, § 5, as Bud's principal place of business is in Worcester County.

**Facts**

7. Upon information and belief, a business email account belonging to the President and Chief Executive Officer of Bud's, Alexander Mazin ("Mazin"), was hacked and monitored by John Doe.

8. During Mazin's interactions with a vendor, John Doe used a false, but very similar email address, to intercept conversations and to act on behalf of the vendor, as if John Doe were the vendor. More specifically, the correct email address of the vendor is mike.holland@thehollandcompanies.com. John Doe used a similar email address of mike.holland@thehollandscompanies.com, adding an additional "s" to the lengthy email address, to deceive Mazin into believing that he was interacting with the vendor.

9. Upon information and belief, John Doe also deleted emails from Mazin's account and responded to Mazin's emails to create the misimpression that Mazin was communicating with the vendor at times when he was actually interacting with John Doe.

10. Upon information and belief, John Doe tracked correspondence in Mazin's email account concerning an impending wire transfer and provided false wire instructions to misdirect the funds.

11. On December 16, 2020, a vendor Mike Holland sent Mazin an invoice in the amount of $459,153.06.

12. On December 18, 2020, at 3:56 p.m., Mazin emailed Mr. Holland (at Mr. Holland's correct email address) to request wiring instructions. Shortly thereafter, at 4:35 p.m., John Doe (using an email address similar but different from Mr. Holland's email address) responded with wiring instructions that were intended to misdirect funds away from their intended recipient.

13. On December 20, 2020, Mr. Holland's accountant emailed wiring instructions, but Mazin never received that email. Upon information and belief, this email was deleted by John Doe who was monitoring Mazin's account.

14. On December 21, 2020, at 9:35 a.m., Mazin emailed Mr. Holland (at Mr. Holland's correct email address) to ask whether it was possible for Bud's to pay by check. Shortly thereafter, at 10:24 a.m., John Doe (using an email address similar but different from Mr. Holland's email address) responded once again with wiring instructions that were intended to misdirect funds away from their intended recipient.

15. Also on December 21, 2020, at 11:26 a.m., Mazin emailed Mr. Holland (at Mr. Holland's correct email address) to notify him that the wire was sent. Shortly thereafter, at 11:36 a.m., John Doe (using an email address similar but different from Mr. Holland's email address) responded that they would confirm the wire.

16. By virtue of the scheme detailed above, John Doe misdirected $459,153.06 from Bud's account at Century Bank, 400 Mystic Avenue, Medford, Massachusetts, to an account at HSBC Bank, 452 5th Avenue, New York, New York, in the name of Merton (the "Merton Account").

17. Upon information and belief, Merton is John Doe and/or has acted in concert with John Doe to defraud Bud's.

18. HSBC Bank was aware of facts putting HSBC Bank on notice that the Merton Account was being utilized to facilitate fraud and steal money.

19. The Merton Account was ostensibly opened as a personal account of Merton, yet the nature and volume of transactions in the account was inconsistent with personal use and placed HSBC Bank on notice that the Merton Account was being utilized to facilitate fraud and steal money.

20. Records produced by HSBC Bank in response to a document subpoena indicate that, between July 2020 and March 2021, there were over twenty instances where large deposits and/or transfers in excess of $10,000 were made into the Merton Account only to be transferred out of the Merton Account the very same day to Silvergate Bank, a bank that holds itself out as specializing in cryptocurrency, in addition to a high volume of other large deposits and/or transfers into and out of the Merton Account, inconsistent with legitimate use of the Merton Account as a personal account.

21. The payment order provided for the wire from Century Bank to HSBC Bank on December 21, 2020 indicates that the payment by Bud's to the Merton Account was intended to satisfy "M. Holland and Son's Construction Inc. Invoice 4 Abbington Construction Project Invoice #3620." HSBC Bank knew or should have known that the construction project

referenced in the sender bank correspondence was not reasonably associated with the personal account of Merton, a resident of Hong Kong, particularly against the high volume of other suspicious transactions.

22. The Uniform Commercial Code (the "UCC") as adopted in both New York and Massachusetts, § 4A-207(b), provides that "[i]f a payment order received by the beneficiary's bank [in this case HSBC Bank] identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules shall apply: . . . (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person shall have rights as beneficiary except the person paid by the beneficiary's bank if such person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order shall not occur."

23. The payment order received by HSBC Bank identified the beneficiary both by name and a bank account number. While the payment order did identify Merton by name, the payment order also identified the name of M. Holland and Son's Construction Inc., creating an inconsistency, such that the name and number identify different persons within meaning of UCC § 4A-207(b). The inconsistency in the payment order was heightened by the fact that Merton is an individual and the Merton Account is a personal account, yet M. Holland and Son's Construction Inc. is clearly a business. HSBC Bank knew or should have known that the name and number on the payment order identify different persons, such that acceptance of the payment order should not have occurred, yet HSBC Bank accepted the order and paid Merton, thereby harming Bud's.

24. Multiple other parties in North America have been victimized by the misuse of the Merton Account to facilitate fraud and steal money including businesses in Texas and British Columbia that had their email accounts hacked to provide the businesses wiring instructions to misdirect funds away from their intended recipients and/or intended purposes.

25. HSBC Bank either had actual knowledge and/or is charged with actual knowledge that the Merton Account was being utilized to facilitate frauds and steal money.

26. Despite being made aware of these facts, refused to take steps to prevent damage to Bud's and others similarly situated.

**Count I**
(Fraud v. Merton and John Doe)

27. Bud's repeats and realleges paragraphs 1 through 26 as if the same were entirely set forth in this paragraph 27.

28. Merton and John Doe engaged in a fraudulent scheme.

29. Merton and John Doe used fraudulent emails to create the misimpression that Mazin was communicating with a vendor to mislead Bud's into wire transferring money for their financial gain.

30. Bud's justifiably and detrimentally relied on the misrepresentations of Merton and John Doe, and changed its position in reliance thereon, by wire transferring $459,153.06 from Bud's account at Century Bank to an account in the name of Merton at HSCB Bank.

31. Bud's has been damaged.

**Count II**
(Conversion v. Defendants)

32. Bud's repeats and realleges paragraphs 1 through 31 as if the same were entirely set forth in this paragraph 32.

33. Bud's wire transferred $459,153.06 from Bud's account at Century Bank to an account in the name of Merton at HSCB Bank.

34. Bud's has been unable to reverse the aforementioned wire transfer.

35. Merton and John Doe wrongfully took possession of the funds transferred for their own use and in denial of Bud's right to the funds.

36. Merton and John Doe are obligated to return the funds transferred because they are not entitled the funds.

37. As a proximate cause of the actions of Merton and John Doe, Bud's has been damaged.

**Count III**
(Massachusetts Privacy Act, Mass. Gen. Laws ch. 214 § 1B v. John Doe)

38. Bud's repeats and realleges paragraphs 1 through 37 as if the same were entirely set forth in this paragraph 38.

39. John Doe invaded the privacy rights of Bud's under the Massachusetts Privacy Act, Mass. Gen. Laws ch. 214 § 1B, by unreasonably, substantially, and seriously interfering with its privacy, through the hacking activity at issue.

40. As a direct and proximate result of John Doe's actions invading Bud's privacy, Bud's has suffered damages.

**Count IV**
(Money Had and Received v. Merton)

41. Bud's repeats and realleges paragraphs 1 through 40 as if the same were entirely set forth in this paragraph 41.

42. Merton holds money which in equity and good conscience belongs to Bud's.

43. Bud's is entitled to equitable relief.

**Count V**
(Unjust Enrichment v. Merton)

44. Bud's repeats and realleges paragraphs 1 through 43 as if the same were entirely set forth in this paragraph 44.

45. Merton received $459,153.06 from Bud's account at Century Bank that Bud's intended to transfer to a vendor to pay an invoice.

46. It would be inequitable, unjust, and unfair to permit Merton to retain the monies transferred.

47. Merton must disgorge the $459,153.06 transferred.

**Count VI**
(Negligence, Gross Negligence, Recklessness and Wanton and Willful Disregard of Harm v. HSBC Bank)

48. Bud's repeats and realleges paragraphs 1 through 47 as if the same were entirely set forth in this paragraph 48.

49. In accepting wires into the Merton Account and allowing transfers of funds out of the Merton Account, HSBC Bank had a duty to Bud's and persons similarly situated to follow the requirements of the UCC, including § 4A-207(b), and to act with reasonable care and not act in a negligent, grossly negligent and/or reckless manner in wanton and willful disregard of the harm that could be caused to such persons by ensuring, among other things, that the Merton Account was not used in a manner to facilitate frauds and steal money.

50. The payment order received by HSBC Bank identified the names of both Merton, an individual, and M. Holland and Son's Construction Inc., a business, creating an inconsistency between the name and account number for the Merton Account, such that they identified "different persons" within meaning of UCC § 4A-207(b). HSBC Bank knew or should have known that the name and number on the payment order identify different persons, such that

acceptance of the order by should not have occurred, yet HSBC Bank accepted the order and paid Merton.

51. The conduct, acts and/or omissions of HSBC Bank in accepting the wire from Bud's account at Century Bank and other wires into the Merton Account, allowing transfers of the proceeds from the wire from Bud's account at Century Bank and other wires out of the Merton Account and failing to prevent further transfers of funds out of the Merton Account after being made aware of facts putting HSBC Bank on notice that the Merton Account was being utilized to facilitate fraud and steal money was negligent, grossly negligent, reckless and/or in wanton and willful disregard of the harm that could be caused to Bud's and persons similarly situated. In addition, HSBC Bank either had actual knowledge and/or is charged with actual knowledge that the Merton Account was being utilized to facilitate frauds and steal money and, despite being made aware of these facts, refused to take steps to prevent damage to Bud's and others similarly situated.

52. As a result of the conduct of HSBC Bank as set forth above and otherwise, Bud's is entitled to judgment against HSBC Bank for any and all damages Bud's has or may incur as a result of these activities including, but not limited to, compensatory damages, punitive damages and attorneys' fees and costs.

**Count VII**
(Aiding and Abetting Fraud and Conversion v. HSBC Bank)

53. Bud's repeats and realleges paragraphs 1 through 52 as if the same were entirely set forth in this paragraph 53.

54. In utilizing the Merton Account, Merton and John Doe gained possession of the proceeds of the wire from Bud's account at Century Bank and other wires with the purpose of misappropriating the proceeds of the wire from Bud's account at Century Bank and other wires

and depriving Bud's and others of funds properly belonging to Bud's and others. Critical to the success of this fraudulent scheme was the existence of a bank account at a respected financial institution. Indeed, the fraudulent scheme of Merton and John Doe would not have been possible without the fraudulent Merton Account.

55. By failing to follow the requirements of UCC § 4A-207(b), accepting wires into the Merton Account, allowing transfers of funds out of the Merton Account and failing to prevent further transfers of funds out of the Merton Account after being made aware of facts putting HSBC Bank on notice that the Merton Account was being utilized to facilitate frauds and steal money, HSBC Bank aided, abetted and facilitated the fraudulent scheme of Merton and John Doe in a manner that was negligent, grossly negligent, reckless and/or acted in a wanton and willful disregard of the harm that could be caused to Bud's and others similarly situated.

56. In addition, HSBC Bank either had actual knowledge and/or is charged with actual knowledge that the Merton Account was being utilized to facilitate frauds and steal money and, despite being made aware of these facts, refused to take steps to prevent damage to Bud's and others similarly situated.

57. As a result of the conduct of HSBC Bank as set forth above and otherwise, Bud's is entitled to judgment against HSBC Bank for any and all damages Bud's has or may incur as a result of these activities including, but not limited to, compensatory damages, punitive damages and attorneys' fees and costs.

**Count VIII**
(Conversion v. HSBC Bank)

58. Bud's repeats and realleges paragraphs 1 through 57 as if the same were entirely set forth in this paragraph 58.

59. HSBC Bank has improperly and wrongfully converted monies rightfully belonging to Bud's by accepting the wire transfer that should not have been accepted under the requirements of UCC § 4A-207(b) and depositing those monies into an account of one of its customers, specifically the Merton Account.

60. HSBC Bank is liable to Bud's for any and all damages it has or may incur as a result of these activities including, but not limited to, compensatory damages, punitive damages and attorneys' fees and costs.

WHEREFORE, Bud's request that the Court enter judgment in its favor and against Defendants as follows:

A. awarding compensatory damages in an amount to be determined at trial;

B. providing restitution to Bud's;

C. granting prejudgment and post-judgment interest on all damages;

D. awarding attorneys' fees and costs of this action; and,

E. awarding such other and further relief as this Court deems just and proper.

Respectfully submitted,

BUD'S GOODS & PROVISIONS CORP.,

By its attorneys,

______________________________________
Barry S. Pollack (BBO #642064)
Peter J. Duffy (BBO #566682)
Pollack Solomon Duffy LLP
101 Huntington Ave., Suite 530
Boston, MA 02199
Tel: 617-439-9800
Fax: 617-960-0490
bpollack@psdfirm.com
pduffy@psdfirm.com

Dated: September 27, 2021