## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS (WORCESTER)

---

BUD'S GOODS & PROVISIONS CORP.,          :

                    *Plaintiff,*          :
        -v-                               :     4:22-cv-40002-TSH

JOHN DOE, LAM YAN WUN MERTON             :
and HSBC BANK USA

                    *Defendants.*         :

---

### DEFENDANT, LAM YAN WUN MERTON'S,
### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO DISMISS FIRST AMENDED COMPLAINT

Now comes the Defendant, Lam Yan Wun Merton ("Merton"), pursuant to Fed. R. Civ.

P. 12(b)(2), and hereby submits this Memorandum of Law in Support of its Motion to Dismiss

Plaintiff's First Amended Complaint and all claims and matters contained therein, on the grounds

that this Court lacks personal jurisdiction over him.  Specifically, the Plaintiff has not satisfied its

burden of setting forth essential facts to support a prima facie showing that jurisdiction over

Merton exists.

As is more fully described below, Plaintiff's claims against Merton should be dismissed.

### INTRODUCTION

The Plaintiff, Bud's Goods and Provisions, Corporation ("Buds" or "Plaintiff") brought

this action against the Defendants, John Doe, Merton, and HSBC Bank, USA ("HSBC"), for

financial injuries it allegedly suffered at the hands of an anonymous hacker.  Plaintiff alleges the

hacker secretly monitored its email account, ultimately tricking it into wiring money into a bank

account intended for another recipient.  Plaintiff maintains that, upon information and belief,

Merton is the anonymous hacker – although no facts suggesting that Merton has any legitimate connection to the Plaintiff are set forth.  Merton now moves to dismiss Plaintiff's claims against him, as the Complaint fails to allege specific facts which would support this Court's exercise of personal jurisdiction over him.

## FACTUAL BACKGROUND

On or about December of 2020, Plaintiff Bud's Goods and Provisions ("Buds"), by and through its President Alexander Mazin ("Mazin"), participated in a series of email communications with Mike Holland of M. Holland and Sons Construction, Inc. ("Holland and Sons"), regarding a construction project known as the "Abbington Construction Project." (Complaint, ¶¶7-12).  Unbeknownst to Mike Holland ("Holland"), his email account was being monitored by a hacker ("John Doe").  Upon information and belief, the Hacker used an email address that was very similar to Holland's actual email address, such that Mazin did not realize he was actually interacting with John Doe instead of Holland.  (Id.).

On or about December 18, 2020, Mazin emailed Holland at his actual email address and requested wiring instructions in order to make an invoice payment on the Abbington Construction Project.  (Id. at ¶12).  Shortly thereafter, John Doe responded to Mazin (using the fake email address) with wiring instructions, presumably intended to misdirect funds away from Holland and Sons.  On December 20, 2020, Holland's accountant responded with legitimate wiring instructions, but John Doe allegedly intercepted that email and deleted it.  (Id. at ¶¶12-14).

As a result of John Doe's allegedly fraudulent emails, Bud's wired $459,153.06 (the "Payment") from its account at Century Bank, 400 Mystic Avenue, Medford, Massachusetts, to an account at HSBC Bank, 452 5th Avenue, New York, New York, in the name of Merton (the

2

"Merton Account").  (Id. at ¶16).  The wire payment order indicated the Payment was intended to satisfy "M. Holland and Son's Construction Inc. Invoice 4 Abbington Construction Project Invoice #3620."  (Complaint, ¶21).

The Merton account is a personal account owned by the Defendant, Lam Yan Wun Merton ("Merton").  At all relevant times and continuing to the present, Merton has resided in Hong Kong.

On September 27, 2021, Bud's filed a Complaint in Superior Court in Worcester, Massachusetts (the "Complaint") against John Doe, Lam Yan Wun Merton, and HSBC Bank USA ("HSBC").  The Complaint contains eight (8) counts, four (4) of which pertain to Merton: Count I (Fraud v. Merton and John Doe); Count II (Conversion v. Defendants); Count IV (Money Had and Received v. Merton); and Count V (Unjust Enrichment v. Merton).  On or about January 6, 2022, the matter was removed to U.S. District Court (Worcester).  (ECF Doc. No. 1).

## LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 12(b)(2), the Plaintiff bears the burden of proving to the Court that personal jurisdiction over the Defendant exists.  *Nandjou v. Marriot Int'l*, 985 F.3d 135, 148 (1st Cir. 2021); *Grice v. VIM Holdings Group, LLC*, 280 F.Supp.3d 258, 269 (2017) (citations omitted).  To make a prima facie showing, plaintiffs "cannot rely on unsupported allegations in their pleadings; they must adduce 'evidence of specific facts.'" [1] *Chen v. U.S. Sports Acad., Inc.,* 956 F.3d 45, 54-56 (1st Cir. 2020) (court looks beyond the

---

[1] Where a court is called to assess whether a plaintiff has met its burden to establish personal jurisdiction over a defendant without first holding an evidentiary hearing, the prima facie standard is applied.  *U.S. v. Swiss Am. Bank*, *Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).

pleadings and examines defendant's properly documented evidentiary proffers only to the extent they are undisputed).

The Plaintiff must show that personal jurisdiction over defendants comports with 1) the forum state's long-arm statute, and 2) the Due Process Clause of the United States Constitution. *Nandjou,* 985 F.3d at 148. The plaintiff must "go beyond the pleadings and make affirmative proof." *Id*. (citations omitted). Conclusory allegations or farfetched inferences in the pleading will not be sufficient to make a prima facie case of personal jurisdiction. *Ticketmaster v-N.Y., Inc. v. Alitio*, 26 F.3d 201, 203 (1st Cir. 1994).

## ARGUMENT

### I.  THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT MERTON, AND THUS DISMISSAL IS APPROPRIATE AS TO THOSE CLAIMS

### A.  MASSACHUSETTS LONG ARM STATUTE

In Massachusetts, a federal court can assert specific personal jurisdiction over an out-of-state defendant in a diversity case only if the state long-arm statute, Mass. Gen. Laws ch. 223A, §3 so allows, and the exercise of jurisdiction is consistent with constitutional due process. *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole*, 290 F.3d 42, 50-52 (1st Cir. 2002). The statute authorizes personal jurisdiction as to any cause of action arising from, among others, defendant's "transacting any business in this commonwealth:; causing tortious injury in this commonwealth by an act or omission outside of this commonwealth if he *regularly* does or solicits business, or engages in any *other persistent course of conduct*, or derives substantial revenue from goods used or consumed or *services rendered*, in this commonwealth." M.G.L. ch. 223A, §3(a), (c), (d) (emphasis added).

4

The test is "designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the non-resident party." *Lyle Richards Int'l v. Ashworth, Inc.*, 132 F.3d 111, 112 (1st Cir. 1997). "[A]n isolated (and minor) transaction with a Massachusetts resident may be insufficient, [but] generally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement. *Tatro v. Manor Care, Inc., 416 Mass. 763,* 770-771 *(1994)*; see also *U.S. Swiss American Bank*, 191 F.3d 30, 38 (1999) (Section 3(d) requires that the injury itself occur in Massachusetts, and does not apply merely because plaintiff fells the effects of a tortious injury there).

"In recent cases, [the First Circuit] ha[s] suggested that the Commonwealth's long-arm statute might imposes limits on the exercise of personal jurisdiction 'more restrictive' than those required by the Constitution." *A Corp. v. All American Plumbing, Inc*., 812 F.3d 54, 59 (1st Cir. 2016), citing *Copia Commc'ns, LLC v. AMResorts*, L.P., 812 F.2d 1, 4 (1st Cir. 2016).[2] However, if the exercise of personal jurisdiction would not satisfy due process, the court need not reach the question of whether personal jurisdiction is appropriate under the "more restrictive" Massachusetts long-arm statute. *Brown v. Dash*, 2020 WL 6806433, at 12 n. 6 (First Circuit held that a district court can 'sidestep the statutory inquiry and proceed directly to the constitutional analysis").

---

[2] The *A Corp* Court declined to "untangle" the potential conflict in precedent between the Massachusetts long-arm statute and the due process clause, because it concluded that the due process clause did not permit the exercise of personal jurisdiction over the defendant. *A Corp*., 812 F.3d at 59. The First Circuit has declined to parse the differences between the statutory requirements and the constitutional ones. *Chen*, 956 F.3d at 54; *Nandjou*, 985 F.3d at 148. Yet, it is settled that the court's exercise of personal jurisdiction must comport with both the statutory and constitutional requirements. *See A Corp.*, 812 F.3d at 58; s*ee also Nandjou*, 985 F.3d at 148; *Chen*, 956 F.3d at 54. Its exercise of personal jurisdiction is not proper if plaintiffs satisfy their burden under the Massachusetts long-arm statute, but not the Due Process Clause. *See Ericson v. Conagra Foods, Inc.*, No. 20-CV-11022-ADB, 2020 WL 6912105, at *4 n. 3 (D. Mass. Nov. 24, 2020) ("given the Supremacy Clause, the Massachusetts long-arm statute cannot permit jurisdiction where it would not be constitutionally permissible").

In *Tatro*, the defendant was a Quality Inn Hotel in Anaheim, California, which regularly solicited business for conferences across the country.  Plaintiff was a member of the American Council of Hypnotist Examiners, which held a conference at a hotel in 1987.  After the 1987 conference, the hotel contacted the council's president to inquire as to whether the council would hold the 1988 conference there.  The hotel wrote to the president, with a proposed contract, which the president accepted.  The council then sent two mailings to its members informing them of the 1988 conference, its date and location, and that they would receive a special rate at the hotel.  Members who registered for the conference in response to the first mailing were sent a preprinted registration provided by the hotel to the council.  The second mailing indicated that an accommodations form would be included with confirmation of registration, but that late registrants to the conference should make registrations directly with the hotel by phone. Plaintiff was a late registrant who reserved a room at the hotel by phone.  She stayed at the hotel for the conference but was injured when she fell in the bathtub in her room.  *Id*. at 765-766.

In *Tatro*, the SJC interpreted the "arising from" clause broadly, and found personal jurisdiction standard was satisfied: "but for the defendant's solicitation of business in Massachusetts (i.e., to provide plaintiff with hotel accommodations in California), the plaintiff would not have been injured in a room in the hotel.  *Id.*

In the instant case, the dispute arises from *John Doe's* alleged monitoring of Holland's email account, and the subsequent wire transfer to a New York bank account.  Even if Merton was John Doe (which he is not), the torts (fraud and conversion) took place in New York.  The legal injury of conversion is deemed to occur where the actual conversion takes place.  *U.S. Swiss*, 191 F.3d at 37, citing *Cycles, Ltd., v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir. 1989); cf. *Ouellette v. True Penny People, LLC*, 352 F.Supp. 3d 114, 152 (D. Mass. 2018) (finding

jurisdiction under an employment agreement negotiated over phone and email, while plaintiff was in the Commonwealth, *for services that would be rendered in the Commonwealth*).

   *U.S. Swiss* involved forfeited assets that were redirected to Antigua, and thus the Court found the conversion injury took place there. *U.S. Swiss*, 191 F.3d at 37, citing *Wenz v. Memory Crystal*, 55 F.3d 1503, 1507-1508 (10th Cir. 1995) (holding that, under a long arm provision similar to Massachusetts', the tortious injury underlying an action for conversion of funds from London accounts by London-based tortfeasors occurred in London). Similarly, since Plaintiff's claim for unjust enrichment is essentially a claim for restitution based on the alleged contract conversion, the legal injury stemming from it also must have been presumed to have taken place in New York (where the contract was formed). *Id*. at 38.

   Furthermore, to satisfy the long-arm statute, the plaintiff in this case must show Merton derived "substantial revenue from services rendered in Massachusetts." *Id*. In this case, Plaintiff's Complaint alleges only that the wire originated in Massachusetts. That fact, without more, is too attenuated to satisfy the long arm standard. Insofar as any services Merton rendered, or any revenue he allegedly received, occurred outside of Massachusetts (such as New York, Hong Kong, or wherever Sterling Bank is located). As such, personal jurisdiction over Merton cannot be premised on the Massachusetts long arm statute. See Id. (finding no personal jurisdiction in Massachusetts over a money launderer who took money from a Massachusetts resident and deposited it in Antigua, because the Massachusetts residency, without more, was too attenuated to satisfy "services rendered").

   Thus, the only allegation that could connect Merton to Massachusetts is the fact that the Plaintiff is a Massachusetts resident. Insofar as Plaintiff's factual allegations claims fall short of satisfying the Massachusetts long-arm statute, there is no need for a constitutional analysis.

However, should this court find Plaintiff's claims against Merton satisfy the long-arm statutory standard, those claims still must be dismissed because the exercise of personal jurisdiction over Merton is not consistent with the Due Process Clause.

## B. CONSTITUTIONAL DUE PROCESS

The Due Process Clause requires that "defendants have 'such [minimum] contacts' with the forum state that 'maintenance of the suit' is 'reasonable, in the context of our federal government, and does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co. v. Montana Eighth Judicial District Court*, ---U.S. ---, 141 S.Ct. 1017 (2021), *quoting Int'l Shoe Co., v. Washington,* 326 U.S. 310, 316,-317, 66 S.Ct. 154 (1945)).   The constitutional analysis turns on the nature and extent of the relationship between the defendant(s) and the forum state. *Id.* Depending on the nature and extent of the relationship, the court may exercise general or specific jurisdiction. *Id.*; *Mueller Sys., LLC v. Robert Teti & Itet Corp.*, 199 F.Supp.3d 270, 278 (D. Mass. 2016).

### 1. *General Jurisdiction*

For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile. *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 924, 131 S.Ct. 2846 (2011).  In addition to domicile, a court may assert general jurisdiction over an individual if he or she consents, or is physically present in the state. *Grice*, 280 F.Supp.3d at 270 (citations omitted).  In the instant case, Merton is not domiciled or present in Massachusetts, nor has he consented to the forum.  Accordingly, there is no general jurisdiction, and the analysis becomes one of specific jurisdiction.

## 2. *Specific Jurisdiction*

The First Circuit adopts a three-part inquiry to determine whether a Court's exercise of specific jurisdiction comports with constitutional due process: relatedness, purposeful availment, and reasonableness. *A Corp.*, 812 F.3d at 59. Specific jurisdiction allows a court to exercise personal jurisdiction over defendants who are less intimately tied to the forum state, but only on certain claims. *Ford,* 141 S.Ct. at 1024. In *Ford*, the Supreme Court explained:

> The contacts needed for this kind of jurisdiction often go by the name purposeful availment. The defendant...must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home -- by, for example, exploiting a market in the forum State or entering a contractual relationship centered there. Yet even then -- because the defendant is not "at home" -- the forum State may exercise jurisdiction in only certain cases. The plaintiff's claims...must arise out of or relate to the defendant's contacts with the forum. Or put just a bit differently, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Id.* at 1024-1025 (citations and punctuation omitted). These limiting principles derive, in part, from an interest in treating defendants fairly. *Id.* at 1025 (citation omitted).

A plaintiff must prevail on all three prongs in order to establish specific jurisdiction. *Mukarker v. City of Phila.*, 178 F.Supp.3d 8, 10-11 (D. Mass. 2016). A court need not reach the reasonableness inquiry if the plaintiff fails to succeed on the first two prongs. *Id.* at 11, citing *Sawtelle v. Farrell,* 70 F.3d 1381, 1384 (1st Cir. 1995).

### a.   Relatedness to Massachusetts

As to the first prong, the plaintiff must demonstrate a nexus between its claims and Merton's forum-based activities. *A Corp*, 812 F.3d at 59, c*iting Adelson v. Hananael,* 652 F.3d 75, 81 (1st Cir. 2011). For tort claims such as fraud and coercion (as Plaintiff alleges against Merton), the relatedness inquiry "focuses on whether the defendant's *in-forum* conduct caused

the injury or gave rise to the cause of action." *United States v. Swiss Am. Bank, Ltd*., 274 F.3d 610, 622 (1st Cir. 2001); see *also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984) (tort of libel is generally held to occur wherever the offending material is circulated).

The First Circuit has held that, under the Due Process clause, a proximate cause requirement "better comports with the relatedness inquiry because it so easily correlates to foreseeability, a significant component of the jurisdictional inquiry." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 715 ((1st Cir. 1996). "A 'but for' requirement, on the other hand, has in itself no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." *Id.* The *Nowak* Court held, however, that "strict adherence to a proximate cause standard in all circumstances is unnecessarily restrictive." *Id.* Instead, the Nowak court found the relatedness prong "is, relatively speaking, a flexible, relaxed standard." *Id.* (citation and punctuation omitted) ("in the context of a contractual or business association and a subsequent tort, the absence of proximate cause per se should always render the exercise of specific jurisdiction unconstitutional….we intend to emphasize the importance of proximate causation, but to allow a slight loosening of that standard when circumstances dictate…we note added protection for defendants' rights….").

For tort claims (such as those Plaintiff asserts against Merton), the relatedness inquiry focuses on a demonstrable nexus between the defendant's in-forum conduct and the plaintiff's injury. *U.S. v Swiss Bank*, 274 F.3d at 622. "[W]hat matters most is the defendant's relation to the forum, not the place of the plaintiff's injury." *Gulf Oil Ltd. P'ship v. Petroleum Mktg. Grp*., 308 F.Supp.3d 453, 460 (D. Mass. 2018) (emphasis in original); see also *A Corp.*, 812 F.3d at 60 (finding indirect effect of out-of-state injury caused by out-of-state conduct insufficient to satisfy the relatedness prong).

In this case, Plaintiff's precise claims establish that the alleged fraud/conversion took place in New York.  Notwithstanding that Plaintiff has not established that Merton is John Doe, the in-forum effects of non-forum injury – *standing alone* – are insufficient to support personal jurisdiction.  *Id.*  Insofar as Merton has no connection to the forum, and insofar as an alleged connection is "what matters most" when conferring personal jurisdiction, personal jurisdiction would be improper here.  *Gulf Oil*, 308 F.Supp.3d at 460.

Unlike the facts in *Tatro*, where the defendant hotel purposefully and "regularly" solicited Massachusetts residents, Plaintiff in this case has not alleged that *Merton* solicited anyone from his residence in Hong Kong.  Instead, Plaintiff alleges that John Doe – "an anonymous hacker" whose "domicile and residential and/or business addresses are unknown" – monitored Plaintiff's email account and allegedly misdirected funds to a New York based bank account.  (Complaint, ¶3).  Thus, not only does Plaintiff fail to establish that its alleged injury arose out of Merton's Massachusetts-based activities, the Complaint fails to identify that Merton himself engaged in any activities or contacts in Massachusetts *at all*.  To the contrary, Plaintiff simply makes "farfetched inferences" that Merton is John Doe.  *See Ticketmaster*, 26 F.3d 201, 203 (1st Cir. 1994).  Significantly, the Complaint also alleges Merton may have "worked in concert" with John Doe, thus implying that John Doe *was actually someone other than Merton*.  (Complaint, ¶17).  Plaintiff further alleges that deposits into Merton's personal New York bank account were transferred to an entirely different bank that is "holds itself out as specializing in cryptocurrency" (Silvergate), and makes the (unsupported) assumption that those transfers were "utilized to …steal money".  (Complaint, ¶¶19-20).

Plaintiff's sweeping assumptions, without more, are insufficient under Federal Rule 12(b)(2).  Plaintiff has set forth no legitimate evidence that Merton has ever communicated with

the Plaintiff, or any of its agents, in Massachusetts.  Although regular emails sent to a

Massachusetts resident may satisfy the relatedness prong, in this case, the Complaint is

completely devoid of a single fact to establish that any one of emails received by Holland or his

agents were actually sent by Merton.  *Cf. First Act, Inc. v. Brook Mays Music Co.,* 311 F.Supp.2d

258, 260-261 (D. Mass. 2004) (finding relatedness satisfied where defendant sent one email to

*sixty* Massachusetts residents and that email formed the basis of the lawsuit).  Further, there is no

evidence that Merton *knowingly* engaged in any alleged fraudulent conduct expressly aimed at

Massachusetts, or that Merton knew that any harm would be suffered there.  See *Calder v. Jones*,

465 U.S. 783, 789 (1984) (emphasis added).

Even if Merton was John Doe (which he is not), and even if he sent emails to the Plaintiff

(which he did not), Plaintiff cannot satisfy the relatedness prong because "what matters most is

[Merton's] relation to the forum, not the place of plaintiff's injury." *Gulf Oil*., 308 F.Supp.3d at

460; see also *A Corp.,* 812 F.3d at 60.  Here, Plaintiff has not sufficiently put forward "evidence

of specific facts" to establish Merton's relation to the forum state, or that the alleged conversion

occurred in Massachusetts.  *See A Corp*., F.3d at 58.  Accordingly, even construing the facts

most favorable to the plaintiff, Plaintiff does not satisfy the relatedness requirement, and thus this

Court cannot exercise personal jurisdiction over Merton.

### b.  Purposeful Availment

The cornerstones of the second prong of the due process inquiry are "foreseeability" and

"voluntariness."  *PREP Tours, Inc., v. Am. Youth Soccer Org*., 913 F.3d 11, 19-20 (1st Cir. 2019).

"Foreseeability" means that, from the nature and extent of their contacts with the forum state,

defendants "should reasonably anticipate being haled into court there."  *A Corp.*, 812 F.3d at 20

(citations omitted).   "Voluntariness" means defendants' contacts with the forum state are the

result of their own choices and actions, not the unilateral choices of and actions of others.  *Ford*,

141 S.Ct. at 1024-1025.  Plaintiffs must establish a "substantial" connection between defendants

and the forum state.  *PREP Tours*, 913 F.3d at 19 (*quoting Burger King*, 471 U.S. at 475, 105

S.Ct. 2174).  That defendants communicated with plaintiffs in the forum state remotely does not

foreclose such a connection.  However, that communications were remote may be relevant to

purposeful availment.  *Id.* at 20 (citation omitted).

   Because the Plaintiff in this case has not satisfy the relatedness prong, the Court need not

consider whether Merton purposefully availed himself of the forum state or whether the exercise

of specific jurisdiction would be reasonable.  *Phillips Exeter Acad. V. Howard Phillips Fund*,

196 F.3d 284, 288 (1ˢᵗ Cir. 1999) ("An affirmative finding on each of these three elements of the

test is required to support a finding of specific jurisdiction.").  However, should this Court agree

that John Doe is "Merton" (which he is not), Plaintiff's still cannot satisfy the constitutional

requirement that Merton "purposefully availed" himself to the privilege of conducting business

in Massachusetts.  Instead, Plaintiff claims arise out of the "unilateral activity of a third person"

(i.e., John Doe); and as such, the exercise of personal jurisdiction over Merton would not be

"fair, just, or reasonable."  *Grice*, 280 F.Supp.3d at 273 (citations omitted).

   Further, Plaintiff has set forth no evidence that Merton's activity (if there some, which

there was not) was voluntary, intentional, not based on the acts of another party, and expressly

and deliberately aimed at Massachusetts, such that Merton could reasonably anticipate being

haled into a Massachusetts court.  See *C.W. Downer & Co., v. Bioriginal Food & Sci Corp*, 771

F.3d 59, 66; cf. *Calder v. Jones*, 465 U.S. 783 (1984) (allegedly libelous story concerned a forum

[California] resident, and magazine that published it sold 600,000 copies a week in California).

"The cornerstones of this inquiry are voluntariness and foreseeability."  *Id*.  In fact, Plaintiff in

this case specifically alleges that the activity was the result of a third party – John Doe, whom it does not identify by name, business, or home address.

The First Circuit has expressly cautioned against the broad proposition that a foreign act with foreseeable effects in the forum state *always* gives rise to specific jurisdiction." *Swiss Am. Bank*, 274 F.3d at 623; cf. *First Act, Inc. v. Brook Mays Music Co.*, 311 F. Supp. 2d 258 (D. Mass. 2004) (finding purposeful availment in Massachusetts when defendant sent defamatory e-mails to *60 individuals* in Massachusetts).  Here, the only alleged contact Merton has with Massachusetts is a few emails sent to a Massachusetts resident.  Even assuming that Merton is John Doe, which is untrue, there is no evidence that Merton conducts any type of service or business in Massachusetts, or even has a Massachusetts bank account.  There is no discernable way for any Massachusetts resident to *contact* Merton, thus it would be patently unreasonable to conclude that Merton *regularly* or *persistently* "conducts business" there.  *See A Corp*., 812 F.3d at 60-61 (finding mere availability of a "passive website," standing alone, is insufficient to subject the defendant to personal jurisdiction); *see also GTE New Media Servs. Inc. v. BellSouth Corp*., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (concluding that "personal jurisdiction surely cannot be based solely on the availability of [forum] residents to access the defendants' websites, for this does not by itself show any persistent course of conduct by defendants in the [forum]).

c.  **Reasonableness**

The third prong of the due process analysis requires that the exercise of jurisdiction must be reasonable, in light of the First Circuit's so-called "gestalt factors."  *A Corp*., 812 F.3d at 61. The gestalt factors that govern reasonableness inquiry are "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most

effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id*.

The Defendant has the burden of proving unfairness. *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174; *Plixer Intn'l, Inc. v. Schrutinzer GmbH,* 905 F.3d 1 (1ˢᵗ Cir. Mass. 2018).  It is "presumptively not unreasonable" for a Court to assert personal jurisdiction over a defendant once it has been established that the claim arises out of the forum-based conduct and the defendant has purposefully availed himself of the laws of the forum state.  *Id*. at 476. Specifically, "a party will only win on the first gestalt factor when the party can show 'some kind of *special or unusual burden*.'" *Griffiths v. Aviva London Assignment Corp.,* 187 F.Supp.3d 342, 349 (D. Mass. 2016) (emphasis added).

Should the plaintiff survive the first two prongs of the due process analysis (which Merton maintains it does not), the final prong of reasonableness is invoked for "close calls."  The aforementioned "gestalt factors" are "'intended to aid the court in achieving substantial justice' and play a larger role in close cases." *A Corp*., 812 F.3d at 61, citing *Adelson v. Hananel*, 510 F.3d 43, 51 (1ˢᵗ Cir. 2007); *see also Ticketmaster*, 26 F.3d at 210 (explaining that "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction").

As indicated, Merton maintains that, based on the foregoing, an in-depth review of the "gestalt factors" is not necessary.   However, the burden Merton would suffer should he be forced to appear from Hong Kong to Massachusetts must be taken seriously this Court. *See Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994) ("The burden associated with forcing a California resident to appear in a Massachusetts court is onerous" and

15

is "entitled to substantial weight in calibrating the jurisdictional scales").  Furthermore, New York (where HBCS is headquartered) has a significant policy interest protecting its corporate resident – and the Plaintiff makes actual factual allegations that pertain to New York (as opposed to those against Merton, that are simply "farfetched conclusions").  Any and all witnesses, and all records as to HBAC's conduct, are based in New York, and Massachusetts and New York have the common interest of litigating this dispute in New York (where the tort of conversion allegedly occurred).

Weighing the multiple considerations together, Plaintiff has not succeeded in showing that Merton's purposeful contacts (or any contacts) with Massachusetts gave rise to its cause of action here.

## CONCLUSION

For the foregoing reasons, this Court lacks personal jurisdiction over the Defendant, Merton, and all claims against him should be dismissed.


                                        Respectfully submitted,
                                        Defendant,
                                        LAM YAN WUN MERTON,


Date: June 14, 2022                     */s/ Jeffrey M. Rosin*
                                        Jeffrey M. Rosin, BBO# 629216
                                        Jessica Kish Kennedy, BBO#560478
                                        O'HAGAN MEYER, PLLC
                                        111 Huntington Ave, Suite 719
                                        Boston, Massachusetts 02199
                                        (617) 843-6800
                                        *jrosin@ohaganmeyer.com*

16

## CERTIFICATE OF SERVICE

I, Jeffrey M. Rosin, hereby certify that on this 14th day of June, 2022, I caused the foregoing

*Defendant's Memorandum of Law in Support of Motion to Dismiss First Amended Complaint* to

be filed electronically with the Court and served upon all known counsel by first-class mail and

email.

Barry S. Pollack, Esq.
Patrick J. Duffy, Esq.
**Pollack Solomon Duffy LLP**
101 Huntington Avenue, Suite 530
Boston, MA  02199
bpollack@psdfirm.com
pduffy@pdsfirm.com
***Attorneys for the Plaintiff***

Sean R. Higgins, Esq.
Keith J. McCarthy, Esq.
**K & L Gates LLP**
One Lincoln Street
State Street Financial Center
Boston, MA  02111-2950
sean.higgins@klgates.com
keith.mccarthy@klgates.com
***Attorneys for the Defendant, HSBC Bank, USA, N.A.***

*/s/ Jeffrey M. Rosin*