UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BUD'S GOODS & PROVISIONS CORP.,<br>Plaintiff,<br><br>v.<br><br>JOHN DOE, LAM YAN WUN MERTON, and<br>HSBC BANK, USA,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 22-40002-TSH |

**MEMORANDUM OF DECISION AND ORDER**
**September 23, 2022**

**Hillman, S.D.J.**

**Background**

Bud's Good & Provisions Corp. ("Bud's" or "Plaintiff") has brought this action against John Doe, Lam Yan Wun Merton ("Merton") and HSBC Bank USA ("HSBC") alleging claims for Fraud (Count I—John Doe and Merton"), Count II (Conversion—all Defendants), Violation of the Massachusetts Privacy Act, Mass.Gen. L. ch. 214, §1B—John Doe), Money Had and Received (Count IV—Merton), Unjust Enrichment (Count V—Merton), Negligence, Gross Negligence, Recklessness and Willful Disregard of Harm (Count VI—HSBC), Aiding and Abetting Fraud and Conversion (Count VII—HSBC), and Conversion (Count VIII—HSBC). Bud's action arises from having fallen prey to a scheme which diverted funds in the amount of $459,153.06 intended for a vendor of Bud's to an account at HSBC in the name of Merton. This Memorandum of Decision

and Order addresses Defendant HSBC Bank USA N.A.'s Motion to Dismiss (Docket No. 10)[1]. For the reasons set forth below, that motion is *granted*.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009). The standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Rhodes v. Ocwen Loan Servicing, LLC*, 44 F.Supp.3d 137, 139 (D.Mass. 2014) (quoting *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007)). A claim is facially plausible if the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 550 U.S. at 665, 129 S.Ct. 1937. "This deferential review, however, does not require that [the court] accept the complaint wholesale; 'bald assertions' and 'unsupportable conclusions' are properly disregarded. *Butler v. Deutsche Bank Tr. Co. Americas*, 748 F.3d 28, 32 (1st Cir. 2014).

## Facts[2]

A business email account belonging to the President and Chief Executive Officer of Bud's, Alexander Mazin ("Mazin"), was hacked and monitored by John Doe. During Mazin's interactions with a vendor, Mike Holland ("Holland"), John Doe used a false, but similar email

---

[1] Defendant, Lam Yan Wun Merton's, Motion To Dismiss First Amended Complaint (Docket No. 20), will be addressed in a separate order.

[2] Bud's complaint is replete with legal conclusion, bald assertions and unsupported contentions which the Court has disregarded. The Court has otherwise accepted the factual allegations set forth in Bud's complaint.

address, to intercept conversations and to act as if John Doe were Holland. More specifically, the correct email address used by Holland is:

**mike.holland@thehollandcompanies.com.**

John Doe created a similar email address by adding an additional "s" at the end of theholland and before companies:

**mike.holland@thehollandscompanies.com.**

John Doe used this email address (the "false thehollandscompanies email address") to deceive Mazin into believing that he was interacting with Holland. John Doe also deleted emails from Mazin's account and responded to Mazin's emails to create the misimpression that Mazin was communicating with Holland at times when he was actually interacting with John Doe. John Doe tracked correspondence in Mazin's email account concerning an impending wire transfer and provided false wire instructions to misdirect the funds.

On December 16, 2020, Holland sent Mazin an invoice in the amount of $459,153.06. On December 18, 2020, at 3:56 p.m., Mazin emailed Holland (at Holland's correct email address) to request wiring instructions. Shortly thereafter, at 4:35 p.m., John Doe, using the false thehollandscompanies email address, responded with wiring instructions that were intended to misdirect funds away from the intended recipient (Holland).

On December 20, 2020, Holland's accountant emailed wiring instructions, which Mazin never received because the email was deleted by John Doe who was monitoring Mazin's account.  On December 21, 2020, at 9:35 a.m., Mazin emailed Holland (at Holland's correct email address) to ask whether it was possible for Bud's to pay by check. Shortly thereafter, at 10:24 a.m., John Doe (using the false thehollandscompanies email address) responded once again with wiring instructions that were intended to misdirect funds away from their intended

recipient, Holland. On December 21, 2020, at 11:26 a.m., Mazin emailed Holland (at his correct email address) to notify him that the wire was sent from Bud's account at Century Bank, 400 Mystic Avenue, Medford, Massachusetts ("Century Bank"). Shortly thereafter, at 11:36 a.m., John Doe (using the false thehollandscompanies email address) responded that they would confirm the wire.

The payment order for the wire from Century Bank to HSBC on December 21, 2020 identified the beneficiary both by name (Merton) and a bank account number— the bank account number was in Merton's name (the "Merton Account"). The payment order also indicated that the payment was intended to satisfy "M. Holland and Son's Construction Inc. Invoice 4 Abbington Construction Project Invoice #3620."

Pursuant to the above-described scheme, John Doe misdirected $459,153.06 from Bud's account at Century Bank to an account at HSBC in the name of Merton (the Merton Account). Bud's believes that Merton has acted in concert with John Doe to defraud it. The Merton Account was opened by Merton as a personal account. Between July 2020 and March 2021, there were over twenty instances where large deposits and/or transfers in excess of $10,000 were made into the Merton Account only to be transferred out of the account the very same day to Silvergate Bank ("Silvergate"). Silvergate is a bank that holds itself out as specializing in cryptocurrency. In addition, a high volume of other large deposits and/or transfers were made into and out of the Merton Account during this period which Bud's speculates was inconsistent with legitimate use of the Merton Account as a personal account.

The Merton Account has been used to facilitate fraud and steal money of multiple other parties, including businesses in Texas and British Columbia that have had their email accounts

hacked to provide the businesses wiring instructions to misdirect funds away from their intended recipients and/or intended purposes.

## Discussion[3]

Bud's has asserted claims against HSBC for: (i) conversion (two counts); (ii) negligence, gross negligence, recklessness: and (iii) willful Disregard of harm, aiding and abetting fraud. Plaintiff's claims against HSBC are based on the premise that HSBC was or should have been aware that Merton's Account was being used for fraudulent activity given the volume, amount and nature of the monetary transactions associated with the account over a period of time. Plaintiff also asserts that because the wire transfer it initiated, which was intended for Holland but went into Merton's Account, included a notation that the payment was intended to satisfy "M. Holland and Son's Construction Inc. Invoice 4 Abbington Construction Project #3620," HSBS knew or should have known that the wire transfer "was not reasonably associated with the persona account of Merton, a resident of Hong Kong," *see Amended Complaint*, at ¶ 21.

HSBC asserts that the claims against it must be dismissed because the wire transfer transaction at issue is governed by Article 4-A the Uniform Commercial Code ("UCC") which preempts Bud's common law claims. HSBC further asserts that irrespective of the fact that Bud's claims fail under the UCC, Bud's has failed to state plausible claims for conversion, negligence. aiding and abetting fraud and conversion.

### Application of the UCC to Bud's Claims

"Electronic funds transfers, commonly known as wire transfers, are governed by Article 4–A of the Uniform Commercial Code. In the belief that 'existing rules of law did not adequately

---

[3] Because Plaintiff's claims, which are all based on common law, involve conduct that occurred both in Massachusetts and New York, the Court must initially determine which state's law applies. HSBC contends that there is no conflict between New York and Massachusetts law regarding the claims and Bud's does not argue to the contrary. Both parties have primarily applied New York law in their legal analysis and the Court will do the same.

address the problems presented by these [types of transactions],' article 4–A was drafted with the intention that it set forth 'a body of unique principles of law that would address every aspect of the electronic funds transfer process and define the rights and liabilities of all parties involved in such transfers.' 'In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment' " *Golden Door V & I, Inc. v. TD Bank*, 123 A.D.3d 976, 977, 999 N.Y.S.2d 510, 511–12 (2014)(internal citations and citations to quoted authorities omitted). "'[C]ommon law claims arising from electronic funds transfers are precluded when such claims would impose liability inconsistent with the rights and liabilities expressly created by Article 4–A' " *Id.* at 979, 999 N.Y.S.2d 510 (citation to quoted case omitted).

"A 'Funds transfer' is defined as 'the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order.' A 'payment order' is 'an instruction of a sender to a receiving bank, transmitted orally, electronically, or in writing, to pay, or to cause another bank to pay, a fixed or determinable amount of money to a beneficiary.'" *Wellton Int'l Express v. Bank of China (Hong Kong)*, No. 19-CV-6834 (JPO), 2020 WL 1659889, at *2 (S.D.N.Y. Apr. 3, 2020), *appeal withdrawn sub nom. Wellton Int'l Express v. Bank of China (Hong Kong) Ltd.*, No. 20-1600, 2021 WL 2026845 (2d Cir. May 6, 2021).   Put another way, "[u]nder Article 4–A, a funds transfer is initiated by a 'payment order,' which is an instruction from the person making the payment (the 'originator'), to a 'receiving' or 'intermediary' bank to transfer the funds to the bank account of the beneficiary, normally in the 'beneficiary's bank.' " *Golden Door V & I, Inc.*, 123 A.D.3d at 977, 999 N.Y.S.2d 510 (citation to quoted authority omitted). In the Instant case, Bud's is the sender

and was indicated as the originator, Century Bank was the receiving bank, Merton was the beneficiary, and HSBC was the beneficiary's bank.

First, the Court finds that despite Bud's creative pleading, the gravamen of its claims concerns the mechanics of the wire transfer and the parties' rights and obligations with respect thereto. Additionally, it is plain from Bud's allegations that it authorized the wire transfer to Merton—indeed, it was Bud's that specified the account number and account name to which the funds were to be transferred. Accordingly, for the reasons set forth below to the extent that Bud's claims are based on the wire transfer, they are barred.

Bud's argues that this case is distinguishable from the myriad of others that have found no liability on the part of banks under similar circumstances[4] because it noted in what is the equivalent of a check "memo" line that the funds were to pay "M. Holland and Son's Construction Inc. Invoice 4 Abbington Construction Project Invoice #3620"), which put HSBC HSBC on notice that there was an inconsistency within the payment order as to the identification of the intended beneficiary. However, as argued by HSBC, the "gratuitous" notation that Bud's included on the form does not create an inconsistency or misdescription on the payment order within the meaning of Section 4A-207 given that the payment order, which was sent by Bud's, identified the beneficiary as Merton and the account number which was Merton's Account. *See* N.Y.U.C.C. Law, §4A-207, cmt 2 (standard format may allow inclusion of name of beneficiary and other information which can be useful to beneficiary's bank, but which plays no part in process of payment).[5]

---

[4] *See e.g. generally Wellton Int'l Express*, 2020 WL 1659889; *Golden Door V & I, Inc. v. TD Bank*, 123 A.D.3d 976, 977, 999 N.Y.S.2d 510; *accord Pedersen v. MidFirst Bank*, 527 F.Supp.3d, 188, 192-93 (N.D.N.Y. 2021)(applying California law as jurisdiction where receiving bank was located, but noting that New York and California law are same).

[5] The Court finds no merit in Bud' assertion that its claims are not barred by the UCC given that as a result of the notation, HSBC had actual knowledge that Merton was not the proper beneficiary of the wire transfer (because, among other reasons, M. Holland and Son's Construction Inc. is a business and Merton's Account is a

The long and short of the Court's conclusion that HSBC bears no liability to Bud's is summed up as follows. Bud's believed that it was directed by its vendor, Holland, to wire transfer payment of an outstanding invoice to Merton, at a specified account number (Merton's Account) at HSBC. Bud's, who had a business relationship with Holland and his company, originated a payment order complying with what it believed to be Holland's request and instructed that HSBC (the receiving/beneficiary bank) pay the money into the Merton Account which it specified was owned by Merton. Bud's now contends that HSBC, which had no tie to Bud's, Holland or M. Holland and Son's Construction, Inc., should have questioned the legitimacy of the wire transfer and is liable to it for failing to do so. However, as stated previously, Article 4A- of the UCC was drafted with the intention of creating "'a body of unique principles of law that would address every aspect of the electronic funds transfer process and define the rights and liabilities of all parties involved in such transfers.'" *Golden Door V & I, Inc.*, 123 A.D.3d at 977, 999 N.Y.S.2d 510. In so doing, the drafters allocated the risk of payment and defined the rights and obligations of the bank in the event that a person mistakenly authorizes a wire transfer to its (the bank's) customer's account after being fraudulently induced to do so by a third party. Under such circumstances, the UCC provides no cause of action against the bank. Accordingly, HSBC's motion to dismiss must be granted unless one or more of Bud's common law claims are not preempted by the UCC.

---

personal account). Bud's seeks to impose a requirement that the receiving bank, at the time that the wire transfer is being processed, undergo a time consuming review and investigation of payment orders to determine whether gratuitous notations included therein create *possible* conflicts with the statutorily required identifying information which is proper on its face. Such a requirement would undermine Article 4A's purpose of ensuring that payment orders are processed quickly and efficiently. *See Grain Traders, Inc. v. Citibank*, *N.A.*, 160 F.3d 97, 102 (2$^d$ Cir. 1998)(One of Article 4-A's primary goals is to promote certainty and finality so that "various parties to finds transfers [will] be able to predict risk with certainty, to insure against risk, to adjust operational and security procedures and to price funds transfer services appropriately." Moreover, requiring banks to deal with matters with which they should not have to be concerned would impede the use of rapid electronic funds transfers in commerce by causing delays and driving up costs).

<u>Whether Bud's Common Law Claims are Totally Preempted by the UCC</u>

The Court has found that to the extent that the UCC provides a remedy for a bank's processing of a fraudulent payment order, such as the one in this case, it displaces common law claims such as Bud's negligence, aiding and abetting fraud and conversion claims. However, the UCC would not displace such claims based on HSBC's actions before and after the transfer.

Bud's argues that its common law claims against HSBC are not preempted by the UCC because HSBC's actions (or failure to act) before the wire transfer at issue permitted Merton and/or a third party to perpetuate the fraud against it. More specifically, Bud's alleges that HSBC is liable because it failed to properly monitor Merton's account for indicia of fraud given that in an approximately nine-month period before the wire transfer at issue over twenty large deposits and/or transfers in excess of $10,000 were made into the Merton Account and transferred out the same day to a bank (Silvergate) known to deal in cryptocurrency. Bud's alleges that HSBC's conduct constituted negligence, that it aided and abetted in the fraud perpetrated against it and that it is liable to Bud's for conversion.

<u>*Bud's Negligence, Gross Negligence and Recklessness Claim*</u>

Little time need be spent on Bud's negligence claim, Bud's is not a customer of HSBC and therefore, HSBC owed it no duty of care. While Bud's argues to the contrary, it has not asserted any facts or raised any legal arguments that would bring it outside of the general rule. Therefore, Bud's has failed to state a plausible claim for negligence against HSBC. *See Cartier Saada S.A. v. Bank of America,* 2022 WL 195598, 21cv2501 (DLC), at 2 (Jan. 21, 2022)(general rule under New York law is that banks do not have a duty of care to non-customers to protect them from intentional torts of their customers; therefore, non-customer claims that bank facilitated third-party's fraud are subject to dismissal).

<u>*Bud's Aiding and Abetting Fraud Claim*</u>

Bud's has asserted a claim against HSBC for aiding and abetting fraud and conversion. Under New York law HSBC may be found liable for aiding and abetting another's intentional tort where it had actual knowledge of the primary wrong and substantially assisted:

> With respect to the element of knowledge, plaintiff[] must plausibly allege actual knowledge of the underlying fraud on the part of the defendant bank[ ]: constructive knowledge is not sufficient, nor is a lower standard such as recklessness or willful blindness. The requirement that a plaintiff allege actual knowledge to state a claim for aiding and abetting fraud is a distinct requirement from the scienter required to allege the underlying fraud. Allegations that the defendant should have known of the conduct are insufficient to raise an inference of actual knowledge, as are allegations of a bank's negligent failure to identify warning signs of fraudulent activity, ... even where such signs converge to form a veritable forest of red flags. Under New York law, if a defendant is under no independent duty, allegations that the defendant ignored obvious warning signs of fraud are not sufficient to allege actual knowledge. In short, pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a strong inference of actual knowledge.

*Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021)(internal citations, quotation marks and citations to quoted cases omitted).

None of the facts alleged in Bud's complaint, considered individually or collectively, raises a strong inference of actual knowledge, that is, Bud's has failed to plead particular facts raising a strong inference that HSBC had the requisite *actual* knowledge that Merton or another was utilizing the Merton Account for fraudulent purposes.[6] Accordingly, Bud's has failed to state a claim against HSBC for aiding and abetting fraud.

<u>*Bud's Conversion Claims*</u>

The Court agrees with HSBC that Bud's cannot state a plausible claim for conversion which requires that the defendant intentionally and without authority assume or exercise control

---

[6] While not relevant to its analysis, the Court notes that at the hearing, Merton's counsel stated that Merton believed he was acting akin to a facilitator for legitimate financial transactions and has vehemently denied engaging in fraudulent activity.

10

over property of another, interfering with that person's right of possession. *See Ultra Dairy LLC v. Kondrat,* 514 F. Supp. 3d 452, 459 (N.D.N.Y. 2021)(New York law defines conversion as "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." (citation to quoted case omitted). To establish a claim for conversion, Bud's must plausibly allege: " '(1) the property subject to conversion is a specific identifiable thing; (2) [it] had ownership, possession or control over the property before its conversion; and (3) [HSBC] exercised an unauthorized dominion over the [property], to the alteration of its condition or to the exclusion of [Bud's] rights.' " *Id.* (citation to quoted case omitted). Bud's conversion claims fail at the third factor in that it has failed to allege facts which state a plausible claim that HSBC exercised unauthorized dominion over the funds. On the contrary, HSBC deposited the funds into its customer's account in accordance with Bud's request (pursuant to the payment order)—it was Merton that had dominion and control over the funds.  Additionally, in contrast to Bud's negligence and aiding and abetting claims, its claims for conversion appears to arise solely out of the wire transfer and not any conduct of HSBC's before or after. Under such circumstances, Bud's conversion claims seek to impose liability on HSBC which is inconsistent with Article-4A and therefore, there is no plausible scenario in which such claims would not be precluded by the UCC. Accordingly, Bud's has failed to state any plausible conversion claim against HSBC.

**Conclusion**

Defendant HSBC Bank USA N.A.'s Motion to Dismiss (Docket No. 10) is **granted**. The dismissal of the aiding and abetting claim shall be without prejudice to Plaintiff asserting *plausible facts* which could support an inference that HSBC had *actual knowledge* of fraudulent conduct relating to the account of its customer, Lam Yan Wun Merton.[7]

**SO ORDERED.**

/s/ **Timothy S. Hillman**
TIMOTHY S. HILLMAN
SENIOR DISTRICT JUDGE

---

[7] Plaintiff shall have until Tuesday, October 18, 2022 to file a motion to amend its aiding and abetting claim.