**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **BUD'S GOODS & PROVISIONS CORP.,** )  **Plaintiff,** )  ) )  ) **v.** ) )  ) **JOHN DOE, LAM YAN WUN MERTON, and** ) **HSBC BANK, USA,** )  **Defendants.** )  ) | **CIVIL ACTION** **NO.  22-40002-TSH** |

**MEMORANDUM OF DECISION AND ORDER**
**March 29, 2023**

**Hillman, S.D.J.**

**Background**

Bud's Goods & Provisions Corp. ("Bud's" or "Plaintiff") has brought this action against

John Doe, Lam Yan Wun Merton ("Merton"), and HSBC Bank USA ("HSBC")[1] to recover

funds lost in a fraudulent hacking scheme allegedly orchestrated by John Doe. Pursuant to the

scheme, John Doe allegedly diverted funds in the amount of $459,153.06 that Bud's intended to

wire transfer to its vendor to. Bud's has asserted claims against Merton for: Fraud (Count I),

Conversion (Count II), Money Had and Received (Count IV), and Unjust Enrichment (Count V).

---

[1] The Court has previously dismissed Bud's claims against HSBC. *See* Memorandum of Decision and Order, dated September 23, 2022 (Docket No. 30). Bud's motion to file a second amended complaint (Docket No. 31) is presently pending before the Court.

This Memorandum of Decision and Order addresses Defendant Merton's motion to dismiss for want of personal jurisdiction (Docket No. 20). For the reasons set forth below, that motion is ***granted***.

## Standard of Review

"When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." *Adams v. Adams*, 601 F.3d 1,4 (1st Cir. 2010). When a defendant moves to dismiss for lack of personal jurisdiction at the inception of a case under Federal Rule of Civil Procedure 12(b)(2), "the court may proceed to adjudication by one or another among several different methods." *Brooks v. Love*, 527 F.Supp.3d 113, 116 (D. Mass. 2021) (quoting *Boit v. Gar-Tec Prod., Inc.*, 967 F.2d 671, 674 (1st Cir. 1992). The most commonly used standard, applicable in this case, is the prima facie standard. *Id.* Under this standard, a court considers "whether the plaintiff has proffered evidence that, if credited, is enough to support a finding of all facts essential to personal jurisdiction." *Id.* Plaintiff "ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts" supporting jurisdiction. *Id.* Finally, in deciding whether jurisdiction is proper, courts should also "consider uncontradicted facts proffered by the defendant." *Dillon Boiler Servs., Co. v. Soundview Vt. Holdings, LLC*, 392 F.Supp.3d 187, 190 (D. Mass. 2019).

## Facts[2]

Alexander Mazin ("Mazin"), president and chief executive officer of Bud's, contracted with Mike Holland ("Holland") of M. Holland and Sons Construction to construct a storefront

---

[2] Bud's complaint is replete with legal conclusion, bald assertions and unsupported contentions which the Court has disregarded. *See Garcia-Catalan v. United States*, 734 F.3d 100 (1st Cir. 2013)( In determining whether the complaint meets the plausibility standard, the court need not credit conclusory legal allegations).The Court has otherwise accepted the factual allegations set forth in the complaint and all supplemental briefs and affidavits submitted to the Court.

for Bud's marijuana dispensary business in Massachusetts. After the project completed in late 2020, Holland emailed Bud's an invoice requesting payment for the job. At that time, unknown to both Holland and Mazin, Bud's email account was being monitored by an anonymous hacker (John Doe). The hacker likely gained access to Bud's account after Mazin followed a link in a phishing email asking him to change his password. When Mazin attempted to reply to Holland to request wiring instructions, the hacker utilized its access to Bud's email account to pose as Holland and trick Bud's into wire transferring $459,153.06 to a bank account wholly unaffiliated with Holland or his construction business.

To achieve his scheme, the hacker created an email address that was only one letter different from Holland's[3] which he then used to communicate with Mazin while disguised as Holland. The hacker intercepted emails between Holland and Mazin, replied pretending to be Holland, and eventually convinced Mazin to wire the $459,153.06 payment into an HSBC bank account in New York ("the Account") belonging to Merton. The Account and email used by the hacker are not associated with Holland in any way. Shortly after the money was transferred into the Account, it was transferred out to a cryptocurrency trading account.

Merton is, and has been a resident of Hong Kong at all times relevant to this suit. Merton claims he uses the Account as a personal bank account and that he was not involved in the hacking. As to how the diverted funds ended up in the Account, Merton claims he too was tricked by someone named "Thompson" (who it is now clear may be John Doe). In support, Merton proffered a text conversation between himself and Thompson wherein Thompson claimed to need help with a financial transaction for a "family friend." *See Exhibit 1* to Merton

---

[3] Holland's business email was Mike.Holland@thehollandcompanies.com whereas the hacker's was Mike.Holland@thehollandscompanies.com (thus, it was the same as Holland's with an extra 's' in the domain name).

Affidavit (Docket No. 25). The text exchange begins with Thompson's request for help with a financial transaction and continues to a conversation wherein Merton explains the regulatory framework of making such transfers. After Merton assured Thompson that the regulatory side of things was set, the two completed the transaction and Merton took his commission. Several times throughout the conversation, Merton requested assurance that the transaction was legitimate, which Thompson gave.

### Discussion

Bud's has asserted claims against Merton for fraud, conversion, money had and received, and unjust enrichment based on Merton's involvement with the fraudulent scheme described above. Merton asserts as an affirmative defense that this Court lacks personal jurisdiction over him as no facts establish that he is the hacker or that he acted in concert with him. In response, Bud's argues that jurisdiction is proper because the Court can infer an agency relationship between Merton and John Doe based on the fact that Merton's account was used to facilitate the fraudulent scheme at issue.

As mentioned above, Bud's has the burden of proving prima facie that personal jurisdiction over Merton is proper. *See Brooks*, 527 F.Supp.3d at 116. To establish such jurisdiction, Bud's must show that the requirements of both the Massachusetts Long Arm Statute and Constitutional Due Process have been met. *Id.*[4] The First Circuit has long held that Massachusetts' Long Arm Statute is "co-extensive" with the due process requirements of personal jurisdiction, but has recently gone further, holding that the statute may be *more* restrictive than standard Due Process requirements. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 59 (1st Cir. 2016). Accordingly, the Court must determine both whether the requirements of

---

[4] Although Due Process also allows for general personal jurisdiction over some defendants, Bud's does not assert that this Court has general jurisdiction over Merton.

Massachusetts' Long Arm Statute have been met and whether exercising personal jurisdiction comports with Due Process.

Massachusetts Long Arm Statute and Agency

The Massachusetts Long Arm Statute lists several methods under which a court can establish jurisdiction over out-of-state defendants. *See* Mass. Gen. L. ch. 223A. The only provision of import here, as it is the only one pled by Bud's, is § 3(c) which states that, "a court may exercise personal jurisdiction over a person, who acts directly *or by an agent*, as to a cause of action in law arising from the person's . . . *causing tortious injury by an act or omission in this commonwealth*." *Id.* (emphasis added). As Bud's alleges no conduct in Massachusetts directly by Merton himself, the Court need only determine whether John Doe is Merton's agent and, if so, whether John Doe's conduct was sufficient to confer personal jurisdiction over Merton.[5]

In order to attribute John Doe's conduct to Merton for purposes of personal jurisdiction, Bud's must sufficiently allege the existence of an agency relationship between them. *Id.* "Under Massachusetts state law, 'agency results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control.'" *Driscoll v. McCann*, 505 F.Supp.3d 32, 37 (D. Mass. 2020) (quoting *Kirkpatrick v. Bos. Mut. Life Ins. Co.*, 473 N.E.2d 173,176 (Mass. 1985). While a formal agency agreement can be dispositive, no formal agreement between defendants need be established in order to find an agency relationship. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 53 (1st Cir. 2002). Instead, the question is whether the relationship between the defendants is sufficient to attribute

---

[5] Although Bud's complaint alleges that Merton either is John Doe or worked in concert with John Doe, Bud's has not alleged any facts which would suggest that Merton is John Doe and the record, as it stands, supports a finding that Merton is not John Doe. Therefore, the Court has focused its discussion on whether Merton can be considered an agent of John Doe or otherwise acted in concert with John Doe.

the conduct of one defendant to another. *Id.* If such a relationship is established, then the contacts

of the agent may be imputed to the principal for purposes of personal jurisdiction. *Id.* at 55.

In the instant case, Bud's has failed to allege facts that establish the basic requirements of

an agency relationship between Merton and John Doe. Instead, relying on *Daynard*, Bud's

asserts that an agency relationship should be inferred between Merton and John Doe based on

"the fact that the Merton Account was the recipient of ill-gotten proceeds of the illicit scheme."

*See* Plaintiff's Opposition to Motion to Dismiss (Docket No. 24). However, *Daynard*'s reasoning

is inapplicable here. In *Daynard*, the Court found an implied agency relationship between two

law firm defendants because the two firms held themselves out as partners throughout their

interactions with the plaintiff. *Daynard,* 290 F.3d at 55. Although no formal agreement was

made, the parties repeatedly purported to work together and led the plaintiff to rely on the

existence of that relationship, to his detriment. *Id.* at 57. Here, Bud's admits that it did not know

of John Doe's involvement until well after the scheme finished and makes no allegation of

detrimental reliance on the existence of such relationship. If anything, the record, including

Merton's text exchange, indicates that Merton *was John Doe's agent*, acting at his direction and

under his control, which is insufficient to establish jurisdiction over Merton. *See e.g., Sarah's

Hat Boxes, L.L.C. v. Patch Me Up, L.L.C.*, 2013 U.S. Dist. LEXIS 52976 (D. N.H.) ("an agent

ordinarily cannot be made subject to personal jurisdiction *based on the acts of a principal*").

Bud's further argues that an agency relationship can be inferred because Merton

"provides no alternative explanation for how" $459,153.06 ended up in his account. However, it

is Bud's burden to establish, based on the record, the likelihood that such a relationship exists,

*not Merton's*. Even so, Merton's proffered text conversation between himself and the individual

identified as "Thompson" indicates Merton simply followed the instructions of an unassociated

6

third party for whom he facilitated a business transaction. This text exchange, unchallenged by

Bud's, constitutes uncontradicted evidence proffered by the Defendant. *See id.* at 51. While

Bud's was certainly the victim of a fraudulent scheme involving Merton's account, Bud's

allegations fall far short of establishing that Merton was in an agency relationship with John Doe,

or that he personally conducts any business within the Commonwealth. Because Bud's has failed

to allege prima facie evidence of an agency relationship between Merton and John Doe, Bud's

has failed to establish personal jurisdiction under § 3(c) of the Massachusetts Long Arm Statute.

Constitutional Due Process

Although Bud's failure to satisfy the requirements of the Massachusetts Long Arm

Statute necessarily means it has failed to satisfy Due Process, for the sake of completeness the

Court will briefly address Bud's Due Process arguments.

To establish specific jurisdiction under the Due Process clause, the plaintiff must allege

sufficient "minimum contacts" by the defendant with the forum state. *Int'l Shoe Co. v.

Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945). Specifically, Bud's must allege sufficient

facts to establish that (1) its claim arises directly from the defendant *forum-state* activities, (2)

the defendant's contacts with the state represent a purposeful availment of the privilege of doing

business here, and (3) the exercise of jurisdiction is ultimately reasonable. *A Corp.,* 914 F.3d at

690.

To satisfy the first prong of the test, Bud's must establish that its claim arises out of

Merton's in-state activities. *Id.* Bud's asserts that this prong is satisfied because its claim arises

out of Merton (or his agent) sending fraudulent emails into Massachusetts that intended to

deceive Bud's. However, as discussed previously, Bud's makes no assertion (other than

conclusory ones) establishing that Merton sent the fraudulent emails himself or that he was

7

working with John Doe to send them. Accordingly, Bud's has failed to establish this first prong

because it failed to allege *any* in-state conduct by Merton personally and as stated above, has

failed to establish an agency relationship between Merton and John Doe. The fact that Bud's was

defrauded in Massachusetts, without more, is not enough to establish a sufficient connection

between Merton and Massachusetts for purposes of personal jurisdiction. That is, without any in-

state conduct, either by Merton or attributable to him, Bud's has failed to meet its burden on the

first prong.

To satisfy the second prong of the Due Process test, Bud's must allege sufficient facts to

established that Merton "purposely availed" himself of the benefits of doing business in

Massachusetts, such that it would be foreseeable he would be haled into court here. *Id.* To

support this prong, Bud's asserts (again) that Merton, either by his own actions or that of an

agent, sent fraudulent emails into Massachusetts with the intent to defraud Bud's. Bud's asserts

that Merton knew or should have known that he was dealing with a business located in

Massachusetts because all of the emails sent by Bud's included signature blocks containing the

Massachusetts-based company information. Whether the inclusion of information identifying

Bud's as a company registered in Massachusetts is sufficient to put the wrongdoer on notice need

not be decided here. Like Bud's other arguments, its purposeful availment argument is based

entirely on the unsupported assertion that Merton is the hacker or worked in concert with him.

Indeed, Bud's makes no factual assertion that Merton personally saw these emails. Since Bud's

has failed to allege sufficient facts to establish that Merton is John Doe or that John Doe was

Merton's agent, and because the record evidence is to the contrary, these emails are not enough

to confer personal jurisdiction over Merton. Accordingly, Bud's has failed to satisfy the second

prong.

The third prong of the test, whether the exercise of personal jurisdiction is ultimately reasonable, is usually used to aid courts in deciding close calls in which the first two prongs do not provide a definitive answer. *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 209 (1st Cir. 1994). This third prong consists of a five-factor test that is used to achieve substantial justice where the court feels a weaker showing on the first two prongs may be overcome with an exceptionally strong showing on this last prong. *Id.* at 210. However, where the first two prongs of the test are clearly unmet, there is no need for the court to consider the third prong because no matter how strong the factors favor exercising personal jurisdiction, no exercise would comport with the strictures of Due Process. As Bud's has failed to establish that the first two prongs of the test are met, an analysis on the reasonableness of exercising personal jurisdiction is unnecessary. The Court holds that for this for this additional reason, it cannot exercise jurisdiction over Merton in this case.

### Conclusion

Bud's has failed to allege sufficient facts to establish this Court's personal jurisdiction over Merton. Therefore, Defendant Lam Yan Wun Merton's Motion to Dismiss (Docket No. 20) is ***granted***. The dismissal of all claims against Defendant Merton shall be without prejudice to Plaintiff. [6]

**SO ORDERED.**

*/s/ **Timothy S. Hillman***
TIMOTHY S. HILLMAN
SENIOR DISTRICT JUDGE

---

[6] Nothing in this Court's decision should be read to imply that Bud's has no viable claim against Merton. The Court holds only that it cannot exercise personal jurisdiction over Merton based on the facts asserted by Bud's.

9