UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BUD'S GOODS & PROVISIONS CORP.,<br>    Plaintiff,<br><br>v.<br><br>JOHN DOE, LAM YAN WUN MERTON, and<br>HSBC BANK, USA,<br>    Defendants. | CIVIL ACTION<br>NO. 22-40002-TSH |

## MEMORANDUM OF DECISION AND ORDER
June 21, 2023

**Hillman, S.D.J.**

## Background

Bud's Goods & Provisions Corp. ("Bud's" or "Plaintiff") has brought this action against John Doe, Lam Yan Wun Merton ("Merton")[1], and HSBC Bank USA ("HSBC" or "Defendant") to recover funds lost in a fraudulent hacking scheme allegedly orchestrated by John Doe. Pursuant to the scheme, John Doe allegedly diverted $459,153.06 that Bud's intended to wire transfer to its vendor, M. Holland and Sons Construction. All of Bud's claims against HSBC in its First Amended Complaint were previously dismissed for failure to state a plausible claim. The dismissal of Bud's aiding and abetting claim against HSBC was without prejudice to it amending its complaint to assert plausible facts which could support an inference that HSBC had actual knowledge of fraudulent conduct relating to the account of its customer, Merton. *See*

---

[1] Plaintiff's claims against Merton have been dismissed for lack of personal jurisdiction. *See Memorandum of Decision and Order*, dated March 29, 2023 (Docket No. 36).

*Memorandum of Decision and Order,* dated September 23, 2022 (Docket No. 30). This Memorandum of Decision and Order addresses Plaintiff's Motion for Leave to File a Second Amended Complaint (Docket No. 31) alleging that HSBC aided and abetted fraud and conversion in the fraudulent scheme. For the reasons set forth below, that motion is **denied**.

## Standard of Review

Under Federal Rule of Civil Procedure 15(a), a court should freely give a party leave to amend a pleading "when justice so requires." Amendment is not warranted, however, when the party engages in "undue delay," acts under a "bad faith or dilatory motive," repeatedly fails "to cure deficiencies by amendments previously allowed," or proposes a futile amendment. *See ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008); *see also Alves v. Daly*, No. 12-10935, 2013 WL 1330010, at *10 (D. Mass. Mar. 29, 2013). HSBC asserts that Bud's request for leave to amend should be denied as futile because the allegations in support of Plaintiff's claim for aiding and abetting proffered in the Second Amended Complaint fail to state a claim upon which relief can be granted. *See Savoy v. White*, 139 F.R.D. 265, 267 (D. Mass. 1991) ("Futility constitutes an adequate basis to deny a proposed amendment.").

In assessing futility, the Court "applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); *see also Campbell v. Bristol Cmty. Coll.*, No. 16-11232, 2018 WL 457172, at *2 (D.Mass. Jan. 17, 2018)(an amendment is futile if it "fail[s] to state a claim upon which relief could be granted.")(citations and internal quotation marks omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S. Ct. 1955 (2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief

2

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). For purposes of evaluating whether the proposed amended complaint states a plausible claim, the Court must accept all factual allegations therein as true and draw all reasonable inferences in plaintiff's favor. *See Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).The standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. A claim is facially plausible if the factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 550 U.S. at 665, 129 S.Ct. 1937. "This deferential review, however, does not require that [the court] accept the complaint wholesale; 'bald assertions' and 'unsupportable conclusions' are properly disregarded. *Butler v. Deutsche Bank Tr. Co. Americas*, 748 F.3d 28, 32 (1st Cir. 2014).

## **Facts**[2]

Alexander Mazin ("Mazin), president and chief executive officer of Bud's, contracted with Mike Holland ("Holland") of M. Holland and Sons Construction to construct a storefront for Bud's marijuana dispensary business in Massachusetts. After the project was completed in late 2020, Holland emailed Mazin concerning payment for the job. At that time, unknown to both Holland and Mazin, Bud's email account was being monitored by an anonymous hacker (allegedly, John Doe). The hacker likely gained access to Bud's account after Mazin followed a link in a phishing email asking him to change his password. When Mazin attempted to reply to Holland to request wiring instructions, the hacker utilized its access to Bud's email account to pose as Holland and trick Bud's into wire transferring $459,153.06 to a bank account wholly unaffiliated with Holland or his construction business. The bank account to which the funds were

---

[2] Similar to its first complaint, Bud's Second Amended Complaint is replete with legal conclusion, bald assertions and unsupported contentions which the Court has disregarded..

wrongly diverted is an HSBC bank account opened in New York by Merton ("the Account"). The same day (December 21, 2020), that the funds were transferred into the Account, they were transferred to an account at Silvergate Bank, a bank known to specialize in cryptocurrency. Between July 2020 and March 2021, there were over twenty instances where deposits in excess of $10,000 were made into the Account and transferred out that same day to Silvergate Bank.

Plaintiff's proposed second amended complaint asserts three additional allegations against HSBC not included in the first amended complaint. More specifically, the proposed amended complaint asserts that HSBC "took immediate notice of [Merton's] fraud" because in August 2020, it declined a transfer from the Account to Silvergate Bank in the amount of $26,69.83.[3] The proposed complaint further alleges that Plaintiff attempted to cancel the fraudulent wire but was told by HSBC it was too late to cancel. Documents provided by HSBC show that the attempted cancellation was roughly two weeks after the wire was initially sent. Finally, Plaintiff asserts that "despite the forgoing, HSBC Bank continued to allow Merton to misuse [his account] in a manner inconsistent with personal use . . . to perpetuate a scam."

## Discussion[4]

### The Parties' Positions

Plaintiff seeks to amend its complaint to revive its claim against HSBC for aiding and abetting fraud and conversion. Plaintiff's proposed claim against HSBC is based on the premise

---

[3] The proposed complaint asserts that HSBC's stated reason for declining the transaction to be: "False match as Lam Y is part of Ordering Customer, who is an individual." Plaintiff further asserts that HSBC declined a second large transfer ($53,934.85) out of the Account into Silvergate Bank in March 2021 for the same reason. Given that the latter transaction was denied several months after the transaction at issue in this case, it is not apparent to the Court how it relevant to the issue of whether HSBC had actual knowledge that the Account was being utilized for fraudulent purposes on December 21, 2020.

[4] Because Plaintiff's claims, which are all based on common law, involve conduct that occurred both in Massachusetts and New York, the Court must initially determine which state's law applies. HSBC contends that there is no conflict between New York and Massachusetts law regarding the claims and Bud's does not argue to the contrary.

that HSBC knew or should have known that the Account was being used for fraudulent activity given the volume, amount, and nature of the monetary transactions associated with it over a period of time. Plaintiff further alleges that HSBC "took immediate notice" that the Account was being used fraudulently when it declined a transfer out of the account in August 2020, and that thereafter HSBC "continued to allow Merton to misuse the Merton Account" to perpetuate the scheme. Plaintiff contends that these circumstances, taken together, support a "strong inference that HSBC Bank had actual knowledge" of the underlying fraud.

In reply, HSBC argues that Plaintiff's proposed complaint is futile because nothing about Merton's use of the Account put HSBC on notice that the Account was being used fraudulently. HSBC further asserts that even if the activity relating to the Account *can* be deemed suspicious, nothing in Plaintiff's proposed second amended complaint establishes that HSBC *actually* knew of the fraud as required to support a claim for aiding and abetting. Because Plaintiff fails to allege any additional facts which would create an inference that HSBC had the requisite knowledge, its request for leave to amend should be denied.

<u>Whether Permitting Plaintiff to Further Amend Its Complaint Would be Futile</u>

Under New York law, a defendant bank may be found liable for aiding and abetting another's intentional tort (here, fraud) where it had actual knowledge of the primary wrong and substantially assisted in it:

> With respect to the element of knowledge, plaintiff[] must plausibly allege actual knowledge of the underlying fraud on the part of the defendant bank[ ]: constructive knowledge is not sufficient, nor is a lower standard such as recklessness or willful blindness. The requirement that a plaintiff allege actual knowledge to state a claim for aiding and abetting fraud is a distinct requirement from the scienter required to allege the underlying fraud. Allegations that the defendant should have known of the conduct are insufficient to raise an inference of actual knowledge, as are allegations of a bank's negligent failure to identify warning signs of fraudulent activity, ... even where such signs converge to form a veritable forest of red flags. Under New York law, if a defendant is under no

5

> independent duty, allegations that the defendant ignored obvious warning signs of fraud are not sufficient to allege actual knowledge. In short, pleading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a strong inference of actual knowledge.

*Berdeaux v. OneCoin Ltd.*, 561 F.Supp.3d 379, 412 (S.D.N.Y. 2021) (internal citations, quotation marks, and citations to quoted cases omitted). It is undisputed that Bud's was the victim of a fraud. Therefore, the issue before the Court is whether Plaintiff's proposed second amended complaint sufficiently alleges that HSBC knew of the underlying fraud and substantially assisted in it. For the reasons set forth below, the Court finds that Plaintiff's request to further amend its complaint is futile because it fails to allege facts that support an inference claim that HSBC had actual knowledge of the underlying fraud at any time relevant to this action and therefore, fails to state a plausible claim for relief.

In order to establish the requisite knowledge for a claim of aiding and abetting, Plaintiff must allege that HSBC had *actual knowledge* of the fraud. *See In re Agape Litig. v. Cosmo,* 773 F.Supp.2d 298, 308 (E.D.N.Y. 2011). Plaintiffs can meet this burden by establishing a strong inference of actual knowledge, but constructive knowledge, or the idea that the defendant should have known of the fraud, is not enough. *In re TelexFree Sec. Litig.*, 626 F.Supp.3d 253, 272 (D.Mass. 2022); *In re TelexFree Sec. Litig.*, 4:14-md-02566-TSH, 2021 WL 5771730, at *6 (D.Mass. Dec. 6, 2021) .[5] Importantly, a bank's notice of "patterns of behavior highly indicative of fraud support, at most, constructive knowledge of a fraud scheme; they are insufficient to give rise to an inference of actual knowledge of the underlying fraud." *See Berdeaux*, 561 F.Supp.3d at 413.

---

[5] The Court acknowledges that *TelexFree* involved the application of Massachusetts law, but the parties and Court agree that there is no substantive difference between Massachusetts and New York law on claims of aiding and abetting against a bank.

In *TelexFree*, this Court distinguished sufficient allegations of actual knowledge from insufficient allegations when it granted a motion to dismiss an aiding and abetting claim against one bank defendant but allowed the claim to move forward against others. *See In re TelexFree*, 2021 WL 5771730, at \*\*6-7, \*14. The *TelexFree* plaintiffs attempted to bring claims of aiding and abetting against several financial institutions, including Bank of America ("BOA") and one of its affiliated companies, Banc of America Merchant Services ("BAM") after an extensive pyramid scheme by TelexFree defrauded the plaintiffs.  This Court allowed the proposed claim against BOA to go forward because the plaintiff alleged that BOA kept TelexFree's accounts open despite knowledge that BAM (its affiliate) terminated TelexFree's account after suspicion of fraud; that BOA opened additional accounts in TelexFree's name after discovering the fraud; and that BOA facilitated millions of dollars in transfers for them, all while expressing concern to the company that its conduct was illegal. *Id.* and *In re TelexFree*, 626 F.Supp. at 272-273. Conversely, this Court did not allow the aiding and abetting claim against BAM to go forward because plaintiff failed to sufficiently plead actual knowledge on its part; the plaintiff simply asserted that BAM should have known from a review of the TelexFree's website, and from the initially high number of chargebacks, that fraud had occurred. *In re TelexFree*, at \*6. This Court ultimately found that although BAM did business with TelexFree and was likely a necessary entity to the fraudulent scheme's success, the idea that BAM should have known TelexFree was conducting a pyramid scheme, without more, was not enough to establish actual knowledge of it. *Id.*

Bud's allegations in the instant case fall far short of establishing that HSBC had actual knowledge of the fraudulent scheme. Although Plaintiff alleges that "critical to the success of this fraudulent scheme was the existence of a bank account at a respected financial institution,"

7

the same could be said about countless other fraudulent financial schemes, regardless of whether the bank involved had any knowledge of the underlying scheme. In its proposed second amended complaint, Plaintiff alleges that a single declined transaction gave HSBC actual knowledge of the fraudulent scheme; this transaction alone cannot be said to have conferred actual knowledge of the scheme as many transactions are declined by banks every day, most of which are not indicative of a fraudulent scheme.

      Plaintiff's conclusory allegation that HSBC knew of the fraud because it "continued to allow Merton to misuse [his account] in a manner inconsistent with personal use" is similarly unavailing because most bank customers are allowed to continue using their account after a single declined transaction. This is especially so where, as in the instant case, there are no allegations that would support an inference that HSBC's reason for declining the transaction was because of suspected fraud. Finally, Plaintiff's allegation that HSBC "took immediate notice that the Merton Account was improperly being used" after denying a single transaction from the Account does not establish that Defendant had actual knowledge of fraud; it is conclusory and without factual basis. If anything, this allegation establishes that HSBC *might* have noticed red flags that *potentially* indicated fraud, far short of the actual knowledge required for aiding and abetting. *See Berdeaux*, 561 F.Supp.3d at 412 (holding that the existence of several red flags indicating suspicious account activity alone is insufficient to establish *actual knowledge*); *see also In re TelexFree*, 626 F.Supp.3d at 275 (banks knowledge that *TelexFree* had been shuttered in Brazil, had ongoing legal issues regarding compensation, was a multilevel marketing company which guaranteed massive returns for passive activity to promoters and made substantial money transfers to foreign accounts of principals may have raised red flags but did not constitute actual knowledge of fraud). Simply put, Plaintiff's allegations do not establish *when*, *where*, or *how*

HSBC allegedly became aware of the fraud and fail to explain how HSBC was involved at all, aside from being a "respected financial institution." Therefore, the Court finds that the allegations in Plaintiff's proposed second amended complaint are insufficient to establish a plausible claim of aiding and abetting against HSBC.

For the reasons stated above, Plaintiff's request for leave to amend must is denied as futile. Accordingly, as to HSBC Plaintiff's First Amended Complaint is dismissed, with prejudice.[6]

## Conclusion

Plaintiff Bud's Goods & Provisions Corporation's Motion for Leave to File a Second Amended Complaint (Docket No. 31) is ***denied***. Accordingly, Plaintiff's First Amended Complaint is *dismissed*.

**SO ORDERED.**

                                                   */s/* ***Timothy S. Hillman***
                                                   TIMOTHY S. HILLMAN
                                                   SENIOR DISTRICT JUDGE

---

[6] In the First Amended Complaint, Defendant "John Doe" is described as an "anonymous hacker" whose place of residence and business are unknown. Prior to removal of this case from state court, Plaintiff was granted until January 1, 2022 to effect service on *all* Defendants. Plaintiff has not filed proof of service on "John Doe" and therefore, "John Doe" is not a properly served and joined defendant. Accordingly, the claims against John Doe are dismissed without prejudice.